Morning. It's still morning. Morning, Your Honors. May it please the Court. Qian Julie Wang for Appellants. Your Honors, this is a one-of-a-kind unique case that merits a unique sanction. This is the only federal case to present such clear evidence of intent to abuse the judicial process. Indeed, this case will set an example for current and future litigants. If this Court allows the district court's order to remain undisturbed, it will send a message to the world that they should try this because they have very little to lose and much to gain. He got a bigger verdict than the first trial, which was wiped away, and he didn't get fees for the first trial, which he won, albeit based on a fraud. That was not a sanction precisely because the judgment was set aside, so he was not a prevailing party. He was not entitled to the damages at that trial. He was not entitled to the fees at that trial. And, in fact, wiping that— How do you answer that? When he went to the second trial without the witness, he still won. Yes, but he won by—he won less than a sixth of the original damages that the original jury awarded. And that is our point, that by setting aside the original judgment and granting him a new trial, the district court put Thomas back at square one. His analysis, his— I think you can say that he's not—he was not entitled to fees from the first trial. Who was the prevailing party in this case? The prevailing party after the second trial was Thomas. Who was the prevailing party in the case, plaintiff or defendant? Plaintiff, Your Honor. Does the statute give the prevailing party entitlement to—not entitlement, but eligibility to receive attorney's fees? Attorney's fees in a valid trial. It doesn't say you can attempt— The statute says that you only get fees for the things that you want, for the aspects. If you argued a motion and you lost that motion, you don't get fees for that? The statute says the prevailing party can get attorney's fees. Correct. So where do you find that the plaintiff was ineligible to get attorney's fees from the first trial? Well, as a matter of sanctions, Your Honor, first of all, I don't think the statute contemplates a situation like this where someone enters a contract to make— The statute says that the prevailing party can get attorney's fees, and the plaintiff was the prevailing party. So the court exercised its discretion not to give fees for the first trial. But in doing so, it misconstrued the purpose of sanctions, which is to offer deterrence and to make whole the other side, and it— That trial in which he won several hundred thousand dollars in damages was vacated. Correct. He didn't win that trial. He didn't get the fruits of what the jury awarded him. And that decision merely placed Thomas at square one. And when he decided to enter this contract with Merrill, what was his cost-benefit analysis? It was that I potentially could win the sum, or I could bargain with this witness, make her an investor in my suit, have her testify more forcefully for me, so I can make a bigger—reach a bigger award for myself. And that— That suggests that she lied in the first trial when she did testify. Well, it is illegal to pay a witness to testify to tell the truth. But in any event, here there were minor inconsistencies between— It's illegal to pay a witness to tell the truth? It's illegal to pay a witness, Your Honor, even to tell the truth, the case law that we cite in our brief. But here there are inconsistencies between her deposition and her trial testimony. She didn't say that she was—she was much more emotional at trial. The district court said she cried crocodile tears. She didn't expressly say that the officers beat Thomas at trial. She said that. And setting that aside, consistency between deposition and trial testimony does not necessarily guarantee that she was telling the truth. It merely says that she was— All the reasons that you're arguing are the reasons why the district court denied attorneys' fees for the first trial. The district court imposed a sanction, imposed a sanction. I mean, did effectively the same thing as a sanction by saying, yes, you get your attorneys' fees, but I'm not going to allow you the attorneys' fees for the first trial because of this misconduct. And that was insufficient to—first of all, two points. First, make the city whole. The city still had to carry its exorbitant costs of the first trial, over half a million dollars. The taxpayers, everyone in this room paid for Thomas's misconduct. Is there any authority that the district court was compelled as a matter of law? I mean, it would have been perfectly appropriate for the district court to give the sanction that you're saying it should have given. But do you have any authority from any place whatsoever that the district court was compelled to give this bigger sanction rather than what the district court did was to say, I'm not giving the attorneys' fees for the first trial? The clear principles from the Supreme Court and this Court is that where there is clear intentional misconduct, and here the district court found egregious intentional misconduct, clear underhanded dealing, they made the district court made those clear findings. And based on those findings, the law, the legal standard says that sanctions are necessary to deter not only Thomas. Why aren't these sanctions that were abused? I mean, any one of us sitting as the trial judge might have given you exactly what it is looking for. But why is what the district court judge did an abuse of his discretion? Here, he did not consider the deterrent principles of sanctions. Instead, what he said was the merits are better tried by a jury. But merits do not play into the sanctions case law. If we look at the case law, it's about deterrence. It's about remedy. It's not about the merits. And here's an example of exactly why merits should not matter. If I have a meritorious claim, I believe that I am entitled to $100,000. But I want a million dollars, and I can bribe or have five witnesses invest in my suit, testify for me, and reach for that million dollars. I can try that, roll the dice, and see what I get. And this type of deterrent, what the district court did is not sufficient, simply not sufficient to deter this type of devious conduct that is really difficult to uncover. I'm sorry? Because it will not deter it for others who want to play the same game. Precisely, Your Honor. Precisely, Your Honor. What the district court did here was simply wipe the slate clean for Thomas so he can retry his suit. He lost a lot when he wiped the slate clean. Right. But he was not entitled to the original verdict because that was a result of. . . He became entitled to it when he became the prevailing party. Not. . . The prevailing party is entitled to request and to have the court grant attorney's fees. So he became the prevailing party. He wasn't the prevailing party after the first trial. He became the prevailing party after the retrial. And after the retrial, as the prevailing party, the court could have granted him his entire attorney's fees. The court didn't do that. The court said, I'm not giving you attorney's fees for the first trial. And our argument is that that decision simply is insufficient to deter specific deterrents towards Thomas and general deterrents to the general public. Your argument is an issue that is committed to the sound discretion of the district court that he didn't do enough to satisfy your desire for retribution. Our argument is that the district court applied the wrong legal standard. The district court made clear findings of egregious underhanded dealing here and simply did not offer a deterrent for Thomas or the general public. He ensured that Thomas did not benefit from that misconduct, yes, but he did not offer any sort of deterrence to future litigants to prevent them from rolling the dice again. And, again, I will say, unlike the sanctions case law that exists, which involved refusal to comply with court orders, this type of contract is very devious and very difficult to uncover. We do not know whether, in fact, Thomas had engaged in this contract, multiple contracts like this, in this suit. And it will be very hard to tell whether other litigants are engaging in this type of contract. And that is precisely why, in this case, the only case of its kind for this type of evidence to come to light, that this court or the district court make an example and tell future litigants that this is not okay to preserve the integrity of the judicial process. I think you have an excellent argument before the district court, and I think the district court ought to have given a bigger sanction. But is there any authority whatsoever where an appellate court has said the district court should have imposed a bigger sanction than it imposed, and we're vacating because it was abuse of discretion not to impose a bigger sanction? No, but that's because this is the first case of its kind. It's a one-of-a-kind case. And here, again, I will ---- There are cases in which a plaintiff, in which a plaintiff, in which whatever side it is, commits some kind of misconduct in the course of the case, but eventually comes out the winner. More often, it will have to do with the plaintiff because defendants hardly ever get attorney's fees. The nature of that misconduct in the case law is very different. The nature there is, you know, not complying with discovery orders, delaying the prosecution of the case. Here, this type of contract, again, is we didn't find out about this until we had been appealing the verdict. This type of contract is incredibly difficult to uncover, and all the more important that this court use its inherent power to sanction Thomas. Thank you. Thank you. May it please the Court? Amanette Hesapete is appearing for the plaintiff appellee here. Did you represent him at either of the trials? I did not. I am appellate counsel here. First of all, it's sheer speculation to say that there might have been more contracts between Mr. Thomas and other parties in the case. Secondly, the lower court did not abuse its discretion. The court first, to your point, Judge LaValle, said that it is the ultimate outcome of the case, not the interim outcome in the case, that is determinative of a party's entitlement to a fee award here. And what the city's attempt with the defendants, rather, are attempting to do is argue to this court that the mandate of the Civil Rights Act to entitle a party to fees is subordinate to a Rule 60B violation. And the plaintiff submits that that's incorrect. First of all, as a matter of law under Federal law, the agreement to compensate a fact witness is not illegal, as has been indicated here. It is a basis for impeachment of the witness. In the case of New York v. Solvent Chemical, for example, which is cited in the brief, a witness had been paid, a fact witness had been paid as a consultant and had testified falsely at his deposition that he had no business relationship with the other defendants and the attorneys for the defendants sat silent during the deposition. When the agreement was discovered, the court, the district court directed that the agreement be turned over. There was no sanction there. In the case of Golden Door, where Lloyds of London compensated witnesses to testify favorably at $753,000, there was no sanction of dismissal. In Goldstein, a request had been made to strike a party's pleading for entering into an agreement to compensate a witness, and the court declined that and said that impeachment was the proper remedy. It is the nondisclosure that gave rise to the 60B violation, not the agreement to compensate the witness, I'd respectfully submit. But the nondisclosure was of cumulative impeachment evidence. At the first trial, the jury knew that Plaintiff and Ms. Marrow lived together. The jury knew that she had a benefit. Her testimony that the district court took issue with was at page 1242 of the record, and as it turns out, her testimony was correct. She was asked that if Plaintiff won a verdict in his favor, would she benefit from it, and she said, I can't speak to what he's going to do. And she was right. He refused to comply with this agreement. He never thought he should have had to pay her, and he did not, as he testified at the second trial, know that the courts have subpoena power to ensure someone's presence at trial. The district court said that he should have known that. He testified he did not. And so this was nondisclosure of cumulative impeachment evidence. We submit and we part ways with the district court to this Court that it did not substantially interfere with the verdict. In cases where there's substantial interference with the verdict, we're talking about testimony that involves fabrication or a change, something that would have changed the theory of liability. Now, the city, the appellants haven't cited any evidence that the sanction that they're seeking here, a dismissal and a fee award to them, is supported by the law. I'd submit to you that the case of Pope, for example, cited in the brief, is applicable here. In Pope, a witness, the plaintiff, I believe it was, had falsified a document, offered testimony, false testimony based on the false document, with the knowledge of counsel. A Rule 11 application was made and the sanction there was dismissal and a fee award because it affected the material issues of liability. This Court in PMC v. Atomogenic, I believe I got that right, there the opposing party had sought a remedy because an expert, they wanted to impeach an expert because he had previously lied about his credentials. This Court said that, quote, there was no close nexus, close quote, to the issues in the case. It was collateral. Now, I'm not condoning what Mr. Thomas did, but the point here is that this did not substantially interfere with the verdict. Another case for the Court to look at is Abramson. In Abramson, the defendant took the stand and with the knowledge of his attorney testified about the way a particular accident had happened and there was no disclosure of a prior inconsistent statement by the defendant that he had fallen asleep at the nail at the time of the accident. After the verdict, when that statement was discovered, that resulted in a sanction of the type that is being sought here. So I would submit to you that this case does not fall within the substantial body of case law concerning the concealment or the nondisclosure of information because it related to collateral impeachment proof. The other point I'd like to make here is that when we're talking about a Rule 60B sanction, we must consider the financial ability of the plaintiff. The individual defendants who are the appellants on this case weren't paying for their legal fees no matter what, liable or not liable. We have an individual plaintiff here, and the city, through the appellants, is suggesting that the plaintiff forfeit his $100,000 verdict and be held liable to the city for $519,000 for the fees from the first trial. No statement is made about these individual defendants being liable to the city for the fees on the second trial. They ultimately did use excessive force, assault plaintiff, and break his hand. And while my client did commit a 60B violation, I would submit to you that under the Civil Rights Act, these defendants should be bearing the greater burden here, the greater penalty. With respect to instances or cases in which this Court has imposed a fee award and sanctions, I would refer the Court to Chambers and Potamkin. And in those cases, great fee awards were imposed, but financial ability of the litigant was given. And in the case of Star Market, this Court said that the fee award, the sanction or the fees should be reduced to something commensurate with the individual's ability to pay. Now, I'd submit to you that what the district court here did was try to make the best of a difficult situation. The Court tried to – could not – the Court concluded that there was a substantial interference because of the credibility issues. And the Court did not believe that it could sever out the impact of Marrow's testimony on the verdict and determined to hold a second trial. We'd submit that it was easier than that because the district court, in denying the defendant's post-trial motion, said that the testimony was not entirely dependent upon Marrow. As a matter of fact, in the post-trial motion – You won the second trial, even when the jury knew about the first trial and what he had done. Correct. And one of the reasons, you know, we're talking about the impact of Marrow's testimony of her absence on the second trial. Certainly, there was an impact. But we also have to remember that the nonparty witness who witnessed the assault of Plaintiff while he was face down in the snow was not available at the second trial, so her testimony was read into the record. But I'd submit to you that the difference in the verdicts more than remedies what occurred here. Nothing was going to place everybody magically back into a position that they would have been in but for this agreement. And by no means is Plaintiff asking that this Court, you know, conclude that he did the right thing here. He certainly did not. He did not cross-appeal here, even though it is his position that at the end of the day, the agreement did not substantially interfere with the verdict. Unless the Court has questions, I'd rest on the brief. Thank you. Thank you. Ms. Wang, you are requested two minutes for rebuttal. Your Honor, it's contrary to what my colleague suggests. The district court made a clear finding that Marrow's testimony made a difference in this case. In granting our motion for a new trial, the district court said credibility was at the very heart of this case. Marrow stepped onto the stand with a straight face and a concealed illegal contract and testified over the equally plausible tales of the officers. There are no hard facts here. Clearly, Marrow's testimony, to the extent that it matters for sanctions, made a difference. And we are, in terms of the damages, we are asking for an offset. Thomas received over $580,000 in damages and fees. Our sum that we are looking for is over $510,000. So it would just be an offset to what he would be entitled to under the new verdict, not a sum. Has that money been paid? I'm sorry? Has the money been paid? I'm not sure. I don't believe so, no. Thank you. And to the point, this is more than impeachment material. This goes to the integrity of the process by which Thomas' suit was tried initially. It goes to the integrity of the process by which any case is tried. And we do not dispute the importance of 1983 suits. We do not dispute the importance of, you know, excessive force suits. And that makes it all the more crucial to preserve the integrity of the process by which each verdict is reached, not just in this case, but in all other cases. And for that reason, we ask that you reverse the district court's order. Thank you. Thank you. Thank you both.